### In re RAYNOR'S WILL.

(*Supreme Court, General Term, Fifth Department.* March, 1892.)

PROBATE OF WILL—INTENTIONS COMMUNICATED BY SIGNS—QUESTION FOR JURY.

A paper was propounded as the will of a man over 70 years old, who was a paralytic and unable to move his right hand. The testimony of a woman who translated his gestures to the scrivener, and of others present, as to the means employed to elicit his intentions, was confused and contradictory, and how it came to be un-

derstood that he desired to make a will did not appear. The supposed answers to questions suggested by his pointing to a church were interpreted to mean that he wished $1,000 to be left to a priest, one-half to be expended in masses for the repose of his soul. The remainder of his estate, valued at over $50,000, was given to his wife, with the exception of trifling sums to be paid his grandchildren. No provision was made for his two sons and three daughters. After the writing had been prepared it was read to decedent, assented to in the same manner as the several provisions had been, and signed with a cross. *Held*, that the evidence as to whether the paper was decedent's will, and was intelligently published and declared by him as such, was not sufficiently clear and satisfactory to warrant the surrogate in admitting it to probate, and a jury trial would be ordered pursuant to the provision of Code Civil Proc. § 2588.

Appeal from surrogate's court, Erie county.

Proceeding for the probate of the alleged will of Francis Raynor, deceased. From an order admitting the same to probate, contestants appeal. Reversed, and jury trial ordered.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*W. H. Hotchkiss* and *M. Shire*, for appellants. *G. E. Stillwell*, for respondents.

DWIGHT, P. J. No question is made on this argument as to the testamentary capacity of the decedent at the time of the execution of the paper propounded as his will. The questions discussed are, does the proof satisfactorily establish the fact (1) that the paper thus propounded embodies the actual will and purpose of the decedent? and (2) that it was intelligently and intelligibly published and declared by him to be his last will and testament? The deceased was a man of upwards of 70 years of age. Some months before this alleged will was drawn he had been stricken by paralysis, and he was then lying helpless and speechless, unable to utter an articulate sound or to move his right hand. He made no attempt at spontaneous expression, but, at the most, responded only by look or gesture to questions put or suggestions made to him. How it came to be understood that he desired to make a will does not appear, but it seems that a scrivener was sent for at the same time as the priest, at a moment when the sick man was supposed to be *in extremis*. The first person brought in to write the will attempted to communicate with the testator, but was able only to elicit the same motions of the head and one hand, and the same gutteral and inarticulate sounds, as expressions, alike, of assent and dissent, and he abandoned the attempt as hopeless. Another person brought in for the same purpose, and who finally wrote the paper propounded as a will, seems to have experienced the same difficulty in communicating directly with the sick man, and declared to his friends that he could make nothing at all out of the interview with him. It was only when a woman present, whom he took for a nurse, but who seems to have been only a neighbor who came in from motives of curiosity and kindness, volunteered to act as interpreter, that he obtained any idea of the supposed wishes of the testator, and such ideas as were thus communicated to him the scrivener reduced to writing. The testimony of this woman, and of other persons present, as to the means by which the supposed wishes of the testator were elicited, is very confused, and sometimes contradictory. The idea that the first wish of the sick man was to make a bequest to his parish priest seems to have been first suggested to the interpreter by his pointing in the supposed direction of the church; and from this rather uncertain indication, and by means of questions suggested by it, she was able to reach the conclusion that he desired to give $1,000 to the priest, of which $500 was to pay for masses for the repose of his soul, and $500 was to be used for the purposes of the church. The other dispositions of his property embraced in the will were indicated in much the same way, and, as understood, consisted of the absolute gift of all the rest and residue of an estate, real and personal, valued at from $50,000 to $100,000, to his wife, with the sole condition that after his death the sum of

$100 should be paid to each of his grandchildren, five in number, of whom three were children of a deceased son. Besides these, his heirs at law consisted of two sons and three daughters. The above provisions, with the designation of his wife and eldest son as executors, having been reduced to writing, the paper was read over to the decedent, and, as the witnesses testify, was assented to by him in the same manner in which his supposed assent had been indicated to its several provisions. The paper was then executed by the scrivener's appending the mark of a cross while the decedent touched the pen. After that he was asked whether he was satisfied to have the three attesting witnesses sign as such, to which he was understood to assent.

This is the substance of the evidence in support of the propositions that the paper in question embodied the full, free, and intelligent purpose of the testator in respect to the disposition of his property, and that it was duly published and declared by him as and for his last will and testament. A valid will may, no doubt, be made and published, by a person unable to write or speak, by the use of signs; but, to entitle such a will to probate, there must be clear and satisfactory proof of what was intended by the signs employed, and that they were correctly understood and faithfully interpreted by the person to whom they were addressed. *Rollwagen* v. *Rollwagen*, 3 Hun, 132, and 63 N. Y. 518, and the cases cited. We have found it impossible to derive from the evidence in this case that degree of satisfaction, in respect to the essential facts above stated, which would warrant us in affirming the decree appealed from, and, without further discussion of those facts, we state our conclusion that the questions involved ought to be submitted to a jury, in accordance with the statute. Code Civil Proc. § 2588. Decree reversed on the facts, and a trial by jury ordered of the material questions of fact arising upon the issues between the parties; such trial to be had in the circuit court in Erie county; order to be settled by the presiding justice of this court; costs of this appeal to abide the final award of costs. All concur.